UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

JORGE SANCHEZ-RODRIGUEZ                              CIVIL ACTION

VERSUS                                              NO. 23-5060

TRAVIS DAY, WARDEN                                  SECTION "D"(2)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing § 2254 Cases. Upon review of the entire record,[1] I have determined that a federal evidentiary hearing is unnecessary.[2] For the following reasons, I recommend that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

## I.    FACTUAL BACKGROUND

Petitioner, Jorge Sanchez-Rodriguez, is a convicted inmate incarcerated in the Rayburn Correctional Center in in Angie, Louisiana.[3] On December 19, 2013, Sanchez-Rodriguez was charged by a bill of indictment in Orleans Parish with aggravated rape of L.A. in violation of LA.

---

[1] The State electronically filed the record at ECF No. 8 at parts 8-1 through 8-9.

[2] A district court may hold an evidentiary hearing only when the petitioner shows either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence (*id.* § 2254(e)(2)(A)(ii)) *and* the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. *Id.* § 2254(e)(2)(B).

[3] ECF No. 1 at 1.

REV. STAT. § 14:42.[4]  Sanchez-Rodriguez pled not guilty on January 24, 2014.[5]  The Louisiana

Fourth Circuit Court of Appeal summarized the established facts as follows:

> In October 2013, the victim L.A. lived with her mother, father, and older brother in New Orleans.  At the time of the incident, the victim was four years old. Mr. Rodriguez, who L.A. and her family knew as "TeeTee," lived next door with his wife Melania Sanchez ("Mrs. Sanchez"), and their five-year old daughter.  From time to time, Mr. Rodriguez's daughter A.S. and the victim would play together.

> In early October 2013, Mrs. Sanchez, accompanied by her daughter, went to the victim's house seeking assistance from L.A.'s mother L.F., in translating some documents.  L.F. allowed her daughter L.A. to visit Mr. Rodriguez's residence for a play date with A.S.  Shortly thereafter, A.S. returned to the victim's residence crying and without the victim.  When L.F. asked A.S. why she was crying she replied: "My dad sent me here."  L.F. then learned her daughter was still with Mr. Rodriguez at his residence.  L.F. subsequently sent her son J.A. next door to find his sister.  When J.A. entered Mr. Rodriguez's residence, he saw L.A. naked and lying on the floor crying.  J.A. testified that he also observed Mr. Rodriguez seated on the sofa "wrapped up in a blanket...all over his body."  When he returned home with his sister, L.A. was crying.

> L.A. eventually explained to her mother that "TeeTee" touched her "peepee," her breasts, called her "Mommy," and "put [his] thing on/in my mouth."  L.F. observed red spots on the areas the victim mentioned.  On the same date, L.A. was taken to Ochsner Hospital, where she was directed to Children's Hospital for an examination and testing.

> Detective Nakeisha Barnes ("Detective Barnes") of the NOPD Child Abuse Unit was the lead investigator in this matter.  Detective Barnes was notified of the incident involving L.A. by the responding patrol officer, who provided Detective Barnes with specifics of the incident.  Detective Barnes relocated to Children's Hospital where she met with L.A. and her parents.  She also spoke with the victim's treating physicians and learned through her investigation that L.A. suffered a sexual assault by Mr. Rodriguez, her next-door neighbor.  Detective Barnes arranged for L.A. to undergo a sexual assault/forensic examination, which included swabs of various parts of her body that were preserved for DNA analysis.

> Ann Troy ("Nurse Troy"), a pediatric forensic nurse practitioner at Children's Hospital specializing in child abuse, conducted the forensic examination of L.A. on

---

[4] ECF No. 8-1 at 122-23, Bill of Information, 12/19/13.  Pursuant to LA. REV. STAT. § 46:1844(W)(3), the state appellate court used initials to protect the discoverability and identity of the minor victim, family members, and a minor witness in this sexual child abuse case.  *State v. Sanchez-Rodriguez*, No. 2018-KA-0578, 2018 WL 6537011, at *1 n.1 (La. App. 4th Cir. Dec. 12, 2018); ECF No. 8-1 at 218, 4th Cir. Opinion, 2018-KA-0578, 12/12/18.  This court will use initials where appropriate.

[5] *Id.* at 114, Min. Entry, 1/24/14.

October 12, 2013, at the Child Advocacy Center (CAC). Prior to conducting the examination, Nurse Troy reviewed the victim's medical records which included an emergency room record. Nurse Troy obtained other medical and social history of the victim from the victim's mother L.F. and later authored a report of her examination of L.A. and the conclusion drawn from her observations. At trial, Nurse Troy testified that she performed a physical examination of L.A. and reviewed with L.A. an anatomically correct drawing of a child's body to ascertain the areas of L.A.'s body affected during the incident. She also identified the tape recording of her interview and examination of L.A. She testified that a translator was in the room to assist in bridging the language barrier as L.A. spoke in Spanish and English. The recording was played in court for the jury. In the interview, L.A. explained to Nurse Troy that Mr. Rodriguez licked her breasts and digitally penetrated her vagina. Nurse Troy also testified that she did not detect any indications that L.A.'s testimony of the incident was coached. In fact, Nurse Troy stated that a four-year-old has no cognitive ability or frame of reference to fabricate a story of sexual abuse.

After speaking with the victim, her family, the treating physicians and Nurse Troy, Detective Barnes obtained an arrest warrant for Mr. Rodriguez. Following his arrest, a search warrant was obtained for a buccal swab from Mr. Rodriguez. The reference sample was obtained and submitted into evidence.

Julia Naylor ("Ms. Naylor"), an expert in the field of DNA analysis employed by the Louisiana State Police Crime Lab, received and tested the contents of the sexual assault kit compiled in this case and authored a report on her findings. The sexual assault kit contained vaginal and oral swabs; two tubes of reference blood; left and right hand fingernail scrapings; and dried secretion gauze, all obtained from the victim on the day of the incident.

The test results from the dried secretion gauze indicated there was more than one contributor of DNA to the gauze. The major contributor was the victim, but the minor contributor was present at such a low concentration, that a valid DNA profile could not be obtained, except to note that the minor contributor was a male.

Testing of the genital swabbing gauze was consistent with a mixture of DNA from at least two male individuals, but again, there was such a limited profile generated, Ms. Naylor could neither include nor exclude Mr. Rodriguez, or any other male individuals in his biological paternal lineage, as the contributor of the DNA. When questioned how such an anomaly could occur, Ms. Naylor opined: "Two males came in contact with the genital area. One male came in contact with the genital area; one male came in contact with the genital swab. There are a million different scenarios." Because there was not enough DNA present on the swab to obtain a valid profile of the contributor, the results were inconclusive.

L.A., eight years old at the time of trial, took the witness stand, but would not testify. Although she stated that she remembered the incident and recalled going

3

to the hospital, L.A. would not talk about what happened to her.  A.S., Mr. Rodriguez's daughter, was also called as a witness but was allegedly too frightened to testify.

Melania Sanchez, Mr. Rodriguez's wife, testified that she and Mr. Rodriguez had been together since 2007 and had two daughters.  Mrs. Sanchez stated that the victim and the victim's family were neighbors at the time of the incident.  Mrs. Sanchez stated that A.S. and the victim played together frequently at both homes.  Mrs. Sanchez indicated that the girls were never alone when playing at her house because she was always present watching them.  She recalled that whenever L.A. came to her house to play with A.S., L.A. was rebellious and would misbehave.  Mrs. Sanchez said L.A. would jump on the beds and furniture, and spill baby powder in the house.  On one occasion, Ms. Sanchez stated she went into the bedroom and found L.A. had removed A.S.'s clothes and both girls were lying next to one another naked.  Ms. Sanchez testified that she chastised the girls and reported the incident to L.A.'s mother, but she did not seem concerned.  According to Mrs. Sanchez, L.F. became very angry for accusing her daughter.

Mr. Rodriguez also testified in his defense at trial and denied harming L.A.  He explained that he came to the United States from Honduras and worked as a welder in Baton Rouge until the time of his arrest.  He stated that L.A. would come to his house frequently to play with his daughter.  He also said L.A., unlike his daughter, was not well-behaved.  Additionally, he indicated that the victim was hyperactive and not an obedient child.  Mr. Rodriguez also corroborated his wife's testimony about the two girls naked in the bedroom.  He testified that his daughter told him that the victim had touched her (A.S.'s) "peepee."  Mr. Rodriguez testified that he forbid his daughter to have anything more to do with the victim.

Conversely, L.F. testified that at no time before the day of the incident was the victim ever allowed to play at Mr. Rodriguez's residence.  She also denied that Mr. Rodriguez complained to her about L.A.'s behavior.  L.F. testified that following the incident, she and her family lived next door to Mr. Rodriguez and his family for the next two years and were subjected to threats and property damage on a regular basis.[6]

Sanchez-Rodriguez proceeded to a jury trial on August 1 through 2, 2017, and was found guilty of the lesser included offense of sexual battery.[7]  On November 3, 2017, the trial court sentenced Sanchez-Rodriguez to a period of incarceration of thirty-five years at hard labor, the

---

[6] *Sanchez-Rodriguez,* 2018 WL 6537011, at *1-3 (footnotes omitted); ECF No. 8-1 at 218-23, 4th Cir. Opinion, 2018-KA-0578, 12/12/18.
[7] ECF No. 8-1 at 65-66, Trial Mins., 8/1/17; *id.* at 60-61, Trial Mins., 8/2/17; *id.* at 343-44, Verdict, 8/2/17; ECF No. 8-4 at 77-144, Trial Tr., 8/1/17; *id.* at 145-276, Trial Tr., 8/2/17.

4

first twenty-five years to be served without the benefit of probation, parole or suspension of sentence.[8]

On direct appeal, Sanchez-Rodriguez's appointed counsel claimed that the evidence was insufficient to uphold the conviction and that the sentence was excessive.[9] On December 12, 2018, the Louisiana Fourth Circuit Court of Appeal affirmed Sanchez-Rodriguez's conviction and remanded for re-sentencing.[10] The court determined that there was sufficient evidence to support Sanchez-Rodriguez's conviction.[11] The court found that the trial court "relied on an incorrect interpretation of the facts presented at trial and impermissible sentencing considerations" in imposing Sanchez-Rodriguez's sentence.[12]

On June 17, 2019, the Louisiana Supreme Court denied Sanchez-Rodriguez's related writ application without assigning reasons.[13] On December 9, 2019, the Supreme Court denied Sanchez-Rodriguez's petition for writ of certiorari.[14]

On February 18, 2020, Sanchez-Rodriguez filed his first application for post-conviction relief.[15] Sanchez-Rodriguez claimed:

(1) "There is articulable doubt based on DNA testing that will prove the Petitioner's innocence;"

(2) The trial court erred in admitting the testimony of Nurse Ann Troy; and

(3) ineffective assistance of counsel.[16]

---

[8] *Id.* at 56, Sentencing Mins., 11/3/17.

[9] *Id.* at 193-216, Appellate Brief, 2018-KA-0587, 8/23/18.

[10] *Sanchez-Rodriguez*, 2018 WL 6537011, at *1-7; ECF No. 8-1 at 217-34, 4th Cir. Opinion, 2018-KA-0578, 12/12/18.

[11] *Id.* at *3-4; ECF No. 8-1 at 224-26, 4th Cir. Opinion, 2018-KA-0578, 12/12/18.

[12] *Id.* at *7; ECF No. 8-1 at 232, 4th Cir. Opinion, 2018-KA-0578, 12/12/18.

[13] *State v. Sanchez-Rodriguez,* 273 So. 3d 1211 (La. 6/17/19); ECF No. 8-6 at 1, La. S. Ct Order, 2019-KO-0100, 6/17/19; *id.* at 5-18, La. S. Ct. Writ Application, 2019-KO-0100, 1/4/19.

[14] Sanchez-Rodriguez v. Louisiana, 140 S. Ct. 627 (2019).

[15] ECF No. 8-1 at 247-49, First Uniform Application for Postconviction Relief, 2/18/20.

[16] *Id.* at 253-59, Memorandum in Support of Application for Post-Conviction Relief Pursuant to LA. C.

On June 9, 2020, Sanchez-Rodriguez submitted a supplemental application for post-conviction relief elaborating on his earlier arguments but not raising any new claims.[17]  On January 19, 2022, the trial court resentenced Sanchez-Rodriguez to a period of incarceration of thirty-five years at hard labor, the first twenty-five years to be served without the benefit of probation, parole or suspension of sentence.[18]

On June 23, 2022, Sanchez-Rodriguez filed another *pro se* application for post-conviction relief reasserting his previous claims.[19]  On October 18, 2022, the trial court denied Sanchez-Rodriguez's application for post-conviction relief.[20]  On December 19, 2022, the Louisiana Fourth Circuit Court of Appeal denied Sanchez-Rodriguez's related writ application.[21]  On May 16, 2023, the Louisiana Supreme Court denied Sanchez-Rodriguez's related writ application finding that he failed to show that he received ineffective assistance of counsel under the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984), and, as to his remaining claims, he failed to satisfy his post-conviction burden of proof under LA. CODE CRIM. PROC. art. 930.2.[22]

## II.    **FEDERAL HABEAS PETITION**

On August 21, 2023, Sanchez-Rodriguez filed a petition for federal habeas corpus relief styled under 28 U.S.C. § 2254 and challenged his current custody.[23]  Sanchez-Rodriguez asserts

---

CRIM. PROC. art. 926.1, 2/20/20.

[17] *Id.* at 184-88, Supplement to Application for Post-Conviction Relief, 6/9/20.

[18] *Id.* at 22, Resentencing Mins., 1/19/22.

[19] *Id.* at 134-43, First Uniform Application for Post-Conviction Relief, 6/30/22 (signed 6/23/22).

[20] ECF No. 8-1 at 126-27, Ruling Denying Post-Conviction Relief, 10/18/22; *id.* at 16, Min. Entry, 10/18/22.

[21] ECF No. 8-8 at 1, La. App. 4th Cir. Order, 2022-K-0773, 12/19/22; *id.* at 2-17, La. App. 4th Cir. Writ Application, 2022-K-0773, 1/17/22.

[22] *State v. Sanchez-Rodriguez*, 360 So. 3d 476 (La. 5/16/23); ECF No. 8-9 at 1-2, La. Sup. Ct. Order, 2023-KH-00191, 5/16/23; *id.* at 3-57, La. S. Ct. Writ Application, 2023-KH-00191, 1/19/23.

[23] ECF No. 1.

the following claims: (1) "[t]here is articulable doubt based on DNA testing that will prove [his] innocence;" (2) the trial court erred in admitting the testimony of Nurse Ann Troy; (3) ineffective assistance of counsel in failing to: (a) investigate and/or prepare the case; (b) object to Nurse Troy's testimony and attack her credibility; (c) obtain an expert witness to rebut Nurse Troy's testimony; (d) "have the two DNA matches confirmed of their exact identity;" (e) move for a mistrial; (f) move for dismissal based on no conclusive evidence of guilt; and (g) present a defense.[24]

The State filed a response in opposition to Sanchez-Rodriguez's petition and conceded that it was timely filed and that his claims are exhausted.[25]  The State asserts that Sanchez-Rodriguez's claims are meritless.[26]  Sanchez-Rodriguez filed a reply.[27]

## III.  <u>LAW AND ANALYSIS</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996,[28] and applies to habeas petitions filed after that date.[29]  The AEDPA therefore applies to Sanchez-Rodriguez's petition filed on August 21, 2023.[30]

---

[24] ECF No. 1 at 4-6; ECF No. 1-1 at 7-18.

[25] ECF No. 7 at 3.

[26] *Id.* at 8-13.

[27] ECF No. 9.

[28] The AEDPA was signed into law on that date and did not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992) *superseded by statute on other grounds as stated in United States v. Jackson*, 115 F.3d 843, 847 n.38 (11th Cir. 197).

[29] *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).

[30] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.  *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  Sanchez-Rodriguez dated his signature August 21, 2023.  ECF No. 1 at 9; ECF No. 1-1 at 20.

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court. In other words, has the petitioner exhausted state court remedies and is the petitioner in "procedural default" on a claim.[31] Here, the State does not seek to time bar Sanchez-Rodriguez's federal habeas petition, nor does it claim that state court review has not been exhausted or that any enumerated claim is in procedural default.[32] This federal habeas court is thus not barred from reviewing Sanchez-Rodriguez's claims.

Nevertheless, for the reasons that follow, Sanchez-Rodriguez is not entitled to federal habeas relief.

### A. **Standards of a Merits Review**

Sections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of fact and law in federal habeas corpus proceedings.[33] Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"[34] The statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1). The determination receives deference, unless the state

---

[31] *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).
[32] ECF No. 7 at 5.
[33] *Nobles*, 127 F.3d at 423 (citing 28 U.S.C. § 2254(b) and (c)).
[34] *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)).

court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"[35]  The United States Supreme Court has clarified the § 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.[36]

The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."[37]  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'"[38]

"'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"[39]  Rather, under the "unreasonable application" standard, "the only question for a

---

[35] *Penry v. Johnson*, 215 F.3d 504, 507 (5th Cir. 2000) (brackets in original) (quoting *Miller v. Johnson*, 200 F.3d 274, 280-81 (5th Cir. 2000)), *aff'd in part, rev'd in part on other grounds*, 532 U.S. 782 (2001); *Hill*, 210 F.3d at 485.

[36] *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Penry*, 532 U.S. at 792-93 (2001) (citing *Williams*, 529 U.S. at 405-06, 407-08); *Hill*, 210 F.3d at 485.

[37] *White v. Woodall*, 572 U.S. 415, 427 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)); *Shoop v. Hill*, 139 S. Ct. 504, 506 (2019) (quoting *Harrington*, 562 U.S. at 103).

[38] *White*, 572 U.S. at 426 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)); *Shoop*, 139 S. Ct. at 509 (habeas courts must rely "strictly on legal rules that were clearly established in the decisions of this Court at the relevant time.")

[39] *Price v. Vincent*, 538 U.S. 634, 641 (2003) (brackets in original) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (citations omitted)).

federal habeas court is whether the state court's determination is objectively unreasonable."[40]  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.[41]

### B. The Claims

### 1.    Actual Innocence/Sufficiency of the Evidence (Claim 1)

Sanchez-Rodriguez claims that new DNA testing will prove that he is actually innocent. The State responds that further DNA testing is an impossibility, and that Sanchez-Rodriguez fails to meet his burden of demonstrating that no reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence.

Sanchez-Rodriguez raised this claim in his application for post-conviction relief.  The state district court denied relief as follows:

> The Petitioner claims in Claim 1 that "there is articulable doubt based on DNA testing that will prove the Petitioner's Innocence."  Other than that conclusory statement, there are no facts alleged that were not already presented to a trier of fact that would support this assertion.  The onus is one the petitioner to provide new evidence, if any such exists, that would support his claim of actual innocence. Instead, he recites the same facts that were presented at trial.  In fact, Petitioner cites to trial record (specifically the transcript), throughout his argument as it relates to Claim 1.  The trier of fact rejected his claim of innocence as it related to this every evidence as presented.  Claim 1 is without merit.[42]

The Louisiana Fourth Circuit Court of Appeals denied relief without assigning reasons.[43] Louisiana Supreme Court found that Sanchez-Rodriguez did not meet his post-conviction burden of proof under La. Code Crim. Proc. art. 9302.[44]

---

[40] *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).

[41] *Price*, 538 U.S. at 641 (*quoting Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

[42] ECF No. 8-1 at 126, Ruling Denying Post-Conviction Relief, 10/18/22.

[43] ECF No. 8-8 at 1, La. App. 4th Cir. Order, 2022-K-0773, 12/19/22.

[44] *Sanchez-Rodriguez*, 360 So. 3d at 476; ECF No. 8-9 at 2, La. Sup. Ct. Order, 2023-KH-00191, 5/16/23.

The United States Supreme Court has yet to recognize a claim of actual innocence as an independent ground for relief in federal habeas corpus proceedings.[45]  As a result, "[t]he Fifth Circuit does not recognize freestanding claims of actual innocence on federal habeas review."[46] Similarly, Sanchez-Rodriguez fails to state a cognizable claim in this Section 2254 habeas proceeding based on his freestanding assertion of actual innocence.

Sanchez-Rodriguez, however, also appears to claim that the evidence was insufficient to support his conviction.[47]  He claims that there was no physical evidence proving he committed the crime of sexual battery.[48]  He points out that, while DNA retrieved from gauze used to swab the exterior of the victim's vagina was positive for two male DNA profiles, he could not be included nor excluded as the donor.[49]

Sanchez-Rodriguez raised a claim of insufficient evidence on direct appeal.  The Louisiana Fourth Circuit Court of Appeals, in denying the claim, found:

### SUFFICIENCY OF THE EVIDENCE

In his first assignment of error, Mr. Rodriguez complains the evidence is insufficient to support his conviction because there was no physical evidence linking him to the crime.

"The constitutional standard for testing the sufficiency of the evidence, enunciated in *Jackson v. Virginia*," 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), "requires that a conviction be based on proof sufficient for any rational trier of fact,

---

[45] *See Herrera v. Collins*, 506 U.S. 390, 400, 113 S. Ct. 853, 122 L.Ed.2d 203 (1993); *accord Reed v. Stephens,* 739 F.3d 753, 766 (5th Cir. 2014) (citing *In re Swearingen,* 556 F.3d 344, 348 (5th Cir.2009); *Foster,* 466 at 359, 367("[A]ctual-innocence is *not* an independently cognizable federal-habeas claim.")).

[46] *In re Swearingen*, 556 F.3d at 348; *accord Brown v. Vannoy*, 800 F. App'x 277, 278 (5th Cir. 2020) ("[A] freestanding claim of actual innocence does not state an independently cognizable ground for § 2254 relief.").  Although an actual innocence claim may serve as "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits," *Schlup v. Delo*, 513 U.S. 298, 315 (1995), procedural default is not at issue here.

[47] ECF No. 1-1 at 8 ("The Federal question before this Honorable Court is, 'Was the DNA evidence sufficient to prove beyond a reasonable doubt that Mr. Sanchez-Rodriguez committed the crime for which he was wrongfully found guilty?'").

[48] *Id.* at 7.

[49] *Id.* at 7-8.

viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt." *State v. Rosiere*, 488 So.2d 965, 968 (La. 1986). However, the reviewing court may not disregard this duty "simply because the record contains evidence that tends to support each fact necessary to constitute the crime." *State v. Mussall*, 523 So.2d 1305, 1311 (La. 1988). "The reviewing court must consider the record as a whole since that is what a rational trier of fact would do." *State v. Shaw*, 07-1427, p. 15 (La. App. 4 Cir. 6/18/08), 987 So.2d 398, 407, *quoting State v. Ragas*, 98-0011, p. 13 (La. App. 4 Cir. 7/28/99), 744 So.2d 99, 107. "If rational triers of fact could disagree as to the interpretation of the evidence, the rational triers' view of all the evidence most favorable to the prosecution must be adopted." *State v. Egana*, 97-0318, p. 6 (La. App. 4 Cir. 12/3/97), 703 So.2d 223, 228. "The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law." *Id.* "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." *State v. Smith*, 600 So.2d 1319, 1324 (La. 1992).

Further, when circumstantial evidence forms the basis of the conviction, such evidence must consist of "proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience." *State v. Shapiro*, 431 So.2d 372, 378 (La. 1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. *Id.*; La. R.S. 15:438. This is not a separate test from *Jackson v. Virginia*, but rather "an evidentiary guideline ... [to] facilitate[ ] appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt." *State v. Wright*, 445 So.2d 1198, 1201 (La. 1984). All evidence, direct and circumstantial, must meet the *Jackson* reasonable doubt standard. *State v. Jacobs*, 504 So.2d 817, 820 (La. 1987). Additionally, the function of an appellate court is not to "evaluate the credibility of the witnesses and to overturn the [jury] on its factual determination of guilt." *State v. Richardson*, 425 So.2d 1228, 1232 (La. 1983). "In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient support for the requisite factual findings." *State v. Turner*, 03-325, p. 8 (La. App. 5 Cir. 6/19/03), 850 So.2d 811, 816, *citing State v. Rivers*, 01-1251, pp. 6-7 (La. App. 5 Cir. 6/19/03), 817 So.2d 216, 219.

La. R.S. 14:43.1(A)(1) defines sexual battery, in pertinent part, as "the intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender ... without the consent of the victim."

In this case, the four-year-old victim immediately reported to her mother what Mr. Rodriguez had done to her. Likewise, L.A. reported to Nurse Troy that Mr. Rodriguez licked her breasts and digitally penetrated her vagina. The evidence also shows that L.A. was at Mr. Rodriguez's house, naked and crying on the floor when her brother found her. Her brother also testified that at the time he found his

distraught sister, Mr. Rodriguez was seated on the sofa covered with a blanket. Additionally, Mr. Rodriguez's daughter returned to L.A.'s house in an emotional state and reported to L.A.'s mother that Mr. Rodriguez sent her to L.A.'s residence while L.A. remained with Mr. Rodriguez. Further supporting the victim's statement was the testimony of Nurse Troy that a child of L.A.'s age has no cognitive ability or frame of reference to fabricate a story of sexual abuse in such detail. Moreover, the jury heard and saw Mr. Rodriguez testify that he did not assault L.A. and never touched her. The jury, as the trier of fact, chose to accept the victim's testimony. The record contains sufficient evidence to support Mr. Rodriguez's conviction for sexual battery. This assignment has no merit.[50]

The Louisiana Supreme Court denied relief without assigning reasons.[51]

A federal habeas court addressing an insufficiency of the evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.[52] As the Supreme Court explained:

> [T]his inquiry does not require a court to ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[53]

Moreover, because the state court's decision applying the already deferential *Jackson* standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential."[54]

To determine whether commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law.[55] The court's

---

[50] *Sanchez-Rodriguez*, 2018 WL 6537011, at *3-4; ECF No. 8-1 at 224-26, La. 4th Cir. Opinion, 2018-KA-0578, 12/12/18.

[51] *Sanchez-Rodriguez,* 273 So. 3d at 1211; ECF No. 8-6 at 1, La. S. Ct Order, 2019-KO-0100, 6/17/19.

[52] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011); *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008).

[53] *Jackson,* 443 U.S. at 319 (emphasis in original) (internal quotation marks and citations omitted).

[54] *Parker v. Matthews*, 567 U.S. 37, 43 (2012); *see also Coleman*, 566 U.S. at 651.

[55] *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U. S. at 324 n.16).

consideration of the sufficiency of the evidence extends only to what was presented at trial.[56]  A federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder.[57]  Thus, review of the sufficiency of the evidence does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury.[58]  All credibility choices and conflicting inferences must be resolved in favor of the verdict.[59]  Again, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'"[60]

A claim of insufficient evidence presents a mixed question of law and fact.[61]  Therefore, this court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

Sanchez-Rodriguez was convicted of sexual battery.  Under Louisiana law, the offense of sexual battery was defined as the "intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender, or the touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim" when "[t]he offender acts without the consent of the victim, or when "[t]he act is

---

[56] *See McDaniel v. Brown*, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (*Jackson* standard relies "upon the record evidence adduced at the trial.") (quoting *Jackson*, 443 U.S. at 324).

[57] *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985).

[58] *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").

[59] *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

[60] *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera*, 506 U.S. at 402).

[61] *Perez*, 529 F.3d at 594; *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995) (citing *Case v. Mondragon*, 887 F.2d 1388, 1392 (10th Cir.1989), *cert. denied*, 494 U.S. 1035 (1990)).

consensual but the other person, who is not the spouse of the offender, has not yet attained fifteen years of age and is at least three years younger than the offender."[62]

As indicated, Sanchez-Rodriguez claims that, given the lack of conclusive DNA evidence, the evidence was insufficient to prove his guilt beyond a reasonable doubt. He argues that the DNA evidence combined with the victim's statements to Nurse Troy raise the probability that someone else molested her. He claims that the State proved only the age element of sexual battery. The trial transcript, however, demonstrates that the evidence was more than sufficient to support the jury's verdict that Sanchez-Rodriguez committed sexual battery on the victim.

Sergeant Merricks authenticated the 911 call and the corresponding "incident recall," which is the paper documentation detailing the information provided in call.[63] The 911 call was played for the jury.[64] An incident recall noted a sexual assault of L.A. by a "possible neighbor" and that L.A. was in the emergency room.[65] According to the report, L.A. was going to be transferred to Children's Hospital.[66]

Officer Barnes, the lead investigator, responded to Children's Hospital.[67] She spoke with L.A.'s mother and the treating physician and learned that L.A. was a victim of a sexual assault by her neighbor.[68] Officer Barnes collected the victim's clothing.[69] The treating physician performed a sexual assault kit on the victim.[70] Officer Barnes was not able to interview the victim because

---

[62] *See* LA. REV. STAT. § 14:43.1(A)(1) & (2) (prior to amendment by 2015 La. Acts, No. 256, § 1).
[63] ECF No. 8-4 at 101-03, Trial Tr., 8/1/17.
[64] *Id.* at 102.
[65] *Id.* at 103.
[66] *Id.*
[67] *Id.* at 107.
[68] *Id.* at 107-09.
[69] *Id.* at 109-110, 117-18.
[70] *Id.* at 111.

she was asleep.[71]  The victim later appeared for a forensic exam at the Audrey Hepburn Center.[72]  Officer Barnes reviewed the transcript of the interview and Nurse Troy's report.[73]  Thereafter, Barnes secured an arrest warrant for Sanchez-Rodriguez.[74]  After Sanchez-Rodriguez's arrest, Barnes obtained a buccal swab from Sanchez-Rodriguez and submitted it into evidence for comparison of DNA.[75]

L.F., the victim's mother, testified that they lived in a duplex and that Sanchez-Rodriguez was the family's next door neighbor who they referred to as TeeTee.[76]  Sanchez-Rodriguez has a daughter, A.S., who is one year older than the victim.[77]  According to L.F., on October 5, 2013, Sanchez-Rodriguez's wife, Melania Rodriguez, and A.S. came to her home because Melania needed assistance translating some paperwork.[78]  Eventually, A.S. asked the victim to play at her home, which L.F. allowed.[79]  At some point, A.S. returned to L.F.'s home crying and said that Sanchez-Rodriguez had sent her.[80]  When A.S. told L.F. that the victim was at her house with Sanchez-Rodriguez, L.F. told her son, J.A., to go and retrieve the victim.[81]  Melania told L.F. that she would go get the victim and left with J.A. following her.[82]  J.A. returned with L.A., who was crying.[83]  J.A. told L.F. that L.A. had already been crying when he went to get her.[84]  Upon

---

[71] *Id.* at 111-12, 119.

[72] *Id.* at 112.

[73] *Id.* at 112.

[74] *Id.* at 115-16.

[75] *Id.* at 116-17.

[76] *Id.* at 123-24.

[77] *Id.* at 124.

[78] *Id.* at 124.-25.

[79] *Id.* at 125.

[80] *Id.* at 125-26.

[81] *Id.* at 126.

[82] *Id.*

[83] *Id.*

[84] *Id.*

questioning, L.A. told L.F. that Teetee touched her "peepee" with a finger and her breasts, put "that thing in [her] mouth," and called her mommy.[85]  L.F. examined L.A. and saw "red,"[86] and, at a friend's urging, took her to Ochsner Hospital, but they were relocated to Children's Hospital.[87]  L.F. explained that they remained in the duplex for another two years and that, during that time, Melania cursed at her, broke her windshield, and let the air out of her vehicle tires.[88]  L.F. testified that L.A. had never played at Sanchez-Rodriguez's home prior to the incident.[89]  She denied that Melania had confronted her about inappropriate behavior by L.A., including jumping on furniture, throwing talcum powder everywhere, and removing A.S.'s pants and touching her.[90]

J.A., the victim's brother, recalled that L.F. asked him to retrieve his sister from next door, which was connected to their home.[91]  He recalled that, when he arrived next door, the victim was on the floor crying and Sanchez-Rodriguez was on the couch wrapped in a blanket.[92]  According to J.A., the victim continued to cry when he brought her home.[93]  J.A. claimed that his sister had played at Sanchez-Rodriguez's house in the past, but that neither Melania nor the petitioner spoke to his mother about L.S.'s behavior.[94]

---

[85] *Id.* at 127.
[86] *Id.* at 130.
[87] *Id.* at 127.
[88] *Id.* at 128-29.
[89] *Id.* at 126, 132.
[90] *Id.* at 132-33.
[91] *Id.* at 134-35.
[92] *Id.* at 135, 137.
[93] *Id.* at 136.
[94] *Id.* at 136-37.

L.A., the victim, refused to testify at trial regarding the incident and said that she did not want to talk about it.[95]  L.A. recalled going to the hospital and telling the doctor the truth about what happened to her but refused to tell the jury what she told the doctor.[96]

Julia Naylor, a DNA analyst with the Louisiana State Police Crim Lab, testified as an expert.[97]  Naylor conducted a DNA analysis of the items included in L.A.'s sexual assault kit.[98] The dried secretion gauze used to swab L.A.'s vagina had more than one contributor, including a potential male contributor, but "[t]he minor contributor was present at such a low concentration that a valid DNA profile could not be obtained."[99]  Naylor reached the same conclusions for the vaginal and oral swabs, specifically that there was an insufficient amount of male DNA to generate a Y-STR profile.[100]  Testing of the genital swabbing gauze showed a mixture of DNA from at least two male individuals, but, due to the limited nature of the profile, Naylor could neither include nor exclude Sanchez-Rodriguez or any male individuals in his biological paternal lineage.[101]  When asked how it was possible to have a mixture of two males coming from a genital swab, Naylor explained, "Potentially two males came into contact with that gauze.  Two males came in contact with that genital area.  One male came in contract with the genital area; one male came into contact with the genital swab.  There is a million different scenarios."[102]  Naylor explained that she could not exclude Sanchez-Rodriguez because there were not enough differences in the evidentiary profile compared to his reference sample, but, because there was male DNA that did not belong to

---

[95] *Id.* at 139-40.
[96] *Id.* at 139.
[97] ECF No. 8-4 at 151, Trial Tr., 8/2/17.
[98] *Id.* at 165-67.
[99] *Id.* at 170-74.
[100] *Id.* at 174.
[101] *Id.* at 175-76, 178, 182.
[102] *Id.* at 179.

18

him, she could not include him.[103]  She testified that, if a perpetrator who sexually assaulted a young girl previously touched another male and then touched the girl, it was possible for both male DNA to be present.[104]

Ann Troy, a forensic nurse practitioner and sexual assault nurse examiner at the Audrey Hepburn CARE Center at Children's Hospital, testified as an expert pursuant to stipulation by the defense.[105]  She conducted a forensic examination and interview of the victim on October 12, 2013.[106]  The victim had no physical findings of neglect or abuse.[107]  The sexual assault kit showed blood in the victim's urine so a urinalysis was repeated.[108]  In her report, Troy summarized that L.A. told Troy that TeeTee touched her "pee pee" and pointed to her "front private" and said that her "booty was angry."[109]  L.A. pointed to her nipples and showed her tongue licking.[110]  L.A.'s mother told Troy that A.S. confirmed that her father touched the victim.[111]  The recorded interview was played for the jury.[112]

During the interview, Troy showed the victim a diagram of a body and L.A. identified body parts.[113]  L.A. identified body parts as "booty," "pee pee," and "chi chi."[114]  L.A. told Troy that TeeTee, whose clothes were off, put something in her mouth.[115]  L.A. reported that her clothes

---

[103] *Id.* at 182.
[104] *Id.* at 183.
[105] *Id.* at 188.
[106] *Id.* at 195.
[107] *Id.* at 200, 220, 228-29.
[108] *Id.* at 201-02.
[109] *Id.* at 201.
[110] *Id.*
[111] *Id.*
[112] *Id.* at 213.
[113] ECF No. 8-1 at 435-37, Transcription of Patient Medical History Take for Evaluation, Diagnosis and Treatment,
[114] *Id.* at 436-37.
[115] *Id.* at 438-39.

were off as well.[116]  When asked if anything happened to her pee pee, L.A. indicated with her finger.[117]  L.A. said that she cried and that her body and booty felt angry.[118]  L.A. also stated that her booty hurt.[119]  When asked whether something happened to her chi chis, L.A. stuck out her tongue and confirmed that TeeTee touched her chi chis with his mouth.[120]  L.A. again told Troy that TeeTee touched her pee pee and did something with his mouth.[121]  L.A. also stated, "Something in my mouth and then he said that's good."[122]  L.A. told Troy that TeeTee was mean and that she did not like him.[123]

Troy testified that L.A. did not display any signs of coaching and actively demonstrated what had happened to her by showing her finger and then pointing to body parts, and pointing to her chest and doing a licking motion with her tongue.[124]  Troy explained that she was unable to comprehend what had happened with L.A.'s mouth, although L.A. said something about pee in her mouth.[125]  Troy recalled that L.F. told her that the victim reported that TeeTee touched her pee pee with his finger, touched her chi chis with his mouth and tongue, she saw "his thing, and that "[h]is baby, put it in [her] mouth."[126]  Troy diagnosed child sexual abuse and notified Child Protection.[127]

---

[116] *Id.* at 441.
[117] *Id.* at 439-40, 444-45.
[118] *Id.* at 440-41.
[119] *Id.* at 441.
[120] *Id.* at 441-42, 44.
[121] *Id.* at 442-43.
[122] *Id.* at 445.
[123] *Id.* at 446.
[124] ECF No. 8-4 at 215-16, Trial Tr. 8/2/17.
[125] *Id.* at 221-23.
[126] *Id.* at 230.
[127] *Id.* at 201.

In his defense, Sanchez-Rodriguez called A.S., his daughter and the victim's friend, however, A.S. said she did not want to testify.[128]

Melania Lopez, Sanchez-Rodriguez's wife, testified that the victim and her daughter, A.S., played at each other's home "continuously."[129]  Lopez claimed that she was always present when the girls played at her house and that there was never a time that Sanchez-Rodriguez was alone in the home with the girls.[130]  Lopez claimed that L.A. was rebellious and did not always obey her.[131]  She recalled one incident when the girls spilled baby powder and another time when the victim jumped on the bed.[132]  Lopez claimed that, on one occasion, she found the girls in a bedroom and claimed that the victim had removed A.S.'s clothes and had her naked on the bed.[133]  Lopez testified that she got mad at the victim and told her not to visit again and told her mother.[134]  Lopez testified that, after that incident, she would not let her daughter play with the victim.[135]  Lopez testified that, on the date of the incident, the victim came over and asked to play with A.S. and that they played at the victim's house in Lopez's presence.[136]  Lopez testified that she later followed the girls back to Lopez's home.[137]  According to Lopez, L.A. stayed for an hour or two until the victim's brother came to retrieve her.[138]  She denied that L.A. was crying when she left.[139]  She further denied staying at the victim's house when the girls went to her home to play, and denied

---

[128] *Id.* at 233.
[129] *Id.* at 235.
[130] *Id.* at 236.
[131] *Id.* at 238-40.
[132] *Id.* at 238.
[133] *Id.*
[134] *Id.* at 238.
[135] *Id.* at 239-40.
[136] *Id.* at 239-41.
[137] *Id.* at 241-42.
[138] *Id.* at 242.
[139] *Id.* at 242-43.

A.S. returning and crying that her dad did not love her anymore.[140]  Lopez denied slashing L.F.'s tires and posting disparaging remarks on Facebook.[141]

Sanchez-Rodriguez testified that he did not do anything to the victim.[142]  He claimed that L.A. frequently came over to their home on weekends, and described her as hyperactive and disobedient.[143]  Sanchez-Rodriguez described one occasion where the girls poured baby powder on their heads.[144]  He claimed that on another occasion his wife found the girls naked under a blanket and, when confronted, his daughter said the victim touched her pee pee.[145]  After that incident, he did not want the victim in their home.[146]  Sanchez-Rodriguez claimed that, on the day of the incident in question, his wife accompanied the girls to their home.[147]  He claimed that he did not touch L.A. and did not know why the victim said what she did.[148]

On rebuttal, Nurse Troy testified that children aged four and five might say someone is mean or that they hate them, make faces or be disrespectful when they get upset.[149]  She explained that children who have not been exposed to some adult content do not have the frame of reference to accuse someone of sexual abuse unless it has happened to them.[150]  She testified that a four-year old does not have the cognitive ability to understand that accusing a person of sexual abuse

---

[140] *Id.* at 242.
[141] *Id.* at 243.
[142] *Id.* at 246.
[143] *Id.* at 249, 252.
[144] *Id.* at 250.
[145] *Id.*
[146] *Id.* at 250-51.
[147] *Id.* at 253.
[148] *Id.* at 254-55.
[149] *Id.* at 256.
[150] *Id.*

would result in a trial and prison.[151]  Nurse Troy explained that a four-year old does not want to get in trouble and does not want to feel ashamed about her body.[152]

Based on the verdict, the jury apparently rejected the testimony of Sanchez-Rodriguez and his wife and found the victim's statements and the testimony of the State witnesses to be the more credible version of the facts.  To the extent that Sanchez-Rodriguez challenges the credibility of the victim and the State witnesses, challenges to the accuracy of witness testimony go to credibility, which is a matter left to the judgment of the trier of fact, and a reviewing court cannot reevaluate that credibility determination.[153]  A federal habeas court generally will not grant relief on an insufficient evidence claim premised on credibility issues.[154]

Further, a state court's decision denying a claim on the merits is considered "unreasonable" only when it runs afoul of the law as set forth by the United States Supreme Court.  If the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law."[155]

Here, Sanchez-Rodriguez has not identified – and this Court's independent research has not uncovered – a United States Supreme Court case with evidence analogous to that presented in this case in which the Supreme Court determined that the *Jackson* standard was unmet.

---

[151] *Id.* at 256-57.

[152] *Id.* at 258.

[153] *State v. Thomas*, 13 So. 3d 603, 607 (La. App. 5th Cir. 2008); *see also Passman v. Blackburn*, 652 F.2d 559, 569 (5th Cir. 1981) (that the jury chose to believe a witness whose credibility was challenged is not a question of constitutional dimensions); *Holderfield v. Jones*, 903 F. Supp. 1011, 1018 (E.D. La. 1985) (habeas courts should defer to the jury's credibility determinations and justifiable inferences of fact.) (citing *United States v. Hatch*, 926 F.2d 387, 399 (5th Cir. 1991)).

[154] *See Schlup v. Delo*, 513 U.S. 298, 330 (1995) ("[U]nder *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review."); *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); *McCowin v. Scott*, No. 93-5340, 24 F.3d 240, 1994 WL 242581, at *2 (5th Cir. May 26, 1994); *Phillips v. Cain*, No. 11-2725, 2012 WL 2564926, at *14 (E.D. La. Apr. 11, 2012), *R.&R. adopted*, 2012 WL 2565025 (E.D. La. July 2, 2012); *Picou v. Cain*, No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

[155] *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).

In summary, viewing the evidence in the light most favorable to the State in accordance with *Jackson*, the State presented sufficient evidence to establish beyond a reasonable doubt that Sanchez-Rodriguez committed sexual battery.  The state courts' denial of relief on this issue was not contrary to or an unreasonable application of *Jackson*.  Sanchez-Rodriguez is not entitled to relief as to this claim.

### 2. Ann Troy's Testimony (Claim 2)

Sanchez-Rodriguez next claims that the trial court erred by admitting the testimony of Nurse Ann Troy.  Sanchez-Rodriguez, relying on a child custody case in which the Louisiana Supreme Court was critical of Troy's methodology and conclusions,[156] claims that Troy did not follow established protocol when she conducted the interview of the victim and that she was biased.  He further claims that Troy's testimony violated *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, wherein the United States Supreme Court set a new standard to assist federal district courts in evaluating the admissibility of expert testimony.[157]

The State responds that Sanchez-Rodriguez fails to state a viable federal constitutional claim.

Sanchez-Rodriguez raised this claim in his application for post-conviction relief.  The state district court found that the claim "is more properly raised on direct appeal."[158]  The Louisiana Supreme Court found that he failed to satisfy his post-conviction burden of proof under LA. CODE CRIM. PROC. art. 930.2.[159]

---

[156] *C.M.J. v. L.M.C.*, 156 So. 3d 16, 25-26 (La. 10/15/14).
[157] 509 U.S. 579, 592-95, 113 S. Ct. 2786, 125 L.Ed.2d 469 (1993).
[158] ECF No. 8-1 at 127, Ruling Denying Post-Conviction Relief, 10/18/22.
[159] *Sanchez-Rodriguez*, 360 So. 3d at 476; ECF No. 8-9 at 2, La. S. Ct. Order, 23-KH-0191, 5/16/23.

To the extent Sanchez-Rodriguez argues that Troy's testimony was admitted in violation of Louisiana law, that claim is not cognizable on federal habeas review.[160]  Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law.[161]  States are free to implement procedures regarding the admission of evidence, provided those procedures do not infringe on a constitutional guarantee.[162]

Federal courts do not sit to review the propriety of state court evidentiary rulings, unless the proceedings violate due process such that the violation renders the criminal proceeding fundamentally unfair.[163]  As the Fifth Circuit has explained, this high standard is not easily satisfied:

> Due process is implicated only for rulings "of such a magnitude" or "so egregious" that they "render the trial fundamentally unfair."  It offers no authority to federal habeas courts to review the mine run of evidentiary rulings of state trial courts. Relief will be warranted only when the challenged evidence "played a crucial, critical, and highly significant role in the trial."  The due process inquiry must consider the significance of the challenged evidence "in the context of the entire trial."  We have held that the Due Process Clause does not afford relief where the challenged evidence was not the principal focus at trial and the errors were not "'so pronounced and persistent that it permeates the entire atmosphere of the trial.'" This is a high hurdle, even without AEDPA's added level of deference.[164]

This issue presents a mixed question of law and fact.[165]  Under the applicable standard of review, this Court therefore must determine if the state courts' decision is contrary to or involved an unreasonable application of Supreme Court precedent prohibiting an unfair trial.

---

[160] *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (citations omitted).

[161] *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Gonzales v. Thaler*, 643 F.3d 425, 429 (5th Cir. 2011); *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992).

[162] *Burgett v. Texas*, 389 U.S. 109 (1967).

[163] *Lisenba v. People of the State of California*, 314 U.S. 219, 236-37 (1941); *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (Habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right.).

[164] *Gonzales*, 643 F.3d at 430-31 (footnotes omitted).

[165] *Wilkerson v. Cain*, 233 F.3d 886, 890 (5th Cir. 2000).

Thus, to present a federal issue, Sanchez-Rodriguez must point to an evidentiary error by the state trial court in allowing the testimony of Troy, and he has not done so. While Sanchez-Rodriguez claims that Troy's testimony violated *Daubert*, "*Daubert* is not premised on the [federal] Constitution."[166] As a result, *Daubert* has no direct applicability to federal habeas corpus claims and cannot serve as a basis for the granting of habeas relief.[167]

The standard on habeas corpus review is not whether the testimony satisfied *Daubert*, but whether the *wrongful* admission of evidence rendered the trial fundamentally unfair under due process standards.[168] Sanchez-Rodriguez has failed to establish any error by the trial court which would trigger review under due process standards.[169] Nurse Troy testified as an expert pursuant to a stipulation of the parties.[170] The Louisiana Supreme Court found that Sanchez-Rodriguez failed to satisfy his post-conviction burden of proof as to the claim that the trial court erred in admitting the testimony.[171] Because Sanchez-Rodriguez has not demonstrated wrongful admission of the evidence, he "has no basis for any alleged due process violation" and his trial was not fundamentally unfair.[172]

---

[166] *Black v. Thomas*, No. 04-567, 2006 WL 2547405, at *7 n.1 (M.D. Ala. Aug. 31, 2006); *accord Williams v. Withrow*, 328 F. Supp. 2d 735, 745 (E.D. Mich. 2004); *see also Farcia v. Director, TDCJ-CID*, 73 F. Supp. 693, 761 (E.D. Tex. Nov. 10, 2014) ("[T]here is no merit to a federal habeas claim based on *Daubert*. *Daubert* did not set a constitutional standard for the admissibility of expert testimony.") (citation omitted).

[167] *See Keller v. Larkins*, 251 F.3d 408, 419 (3rd Cir. 2001); *Craig v. Cain*, No. 08–3486, 2009 WL 117010, at *9 (E. D. La. Jan. 14, 2009); *Stogner v. Cain*, No. 05-4317, 2008 WL 269078, at *13 (E.D. La. Jan. 30, 2008); *Payne v. Bobby*, No. 05-050, 2006 WL 508784, at *23 (S.D. Ohio Feb. 27, 2006), *R.&R. adopted*, 2006 WL 2583380 (S.D. Ohio Sept. 6, 2006); *Hassinger v. Adams*, No. 05–01011, 2006 WL 294798, at *13 n. 6 (N.D. Cal. Feb. 7, 2006).

[168] *Milone v. Camp*, 22 F.3d 693, 702 (7th Cir. 1994); *Wilson v. Sirmons*, 536 F.3d 1064, 1101 (10th Cir. 2008); *Williamson v. Ward*, 110 F.3d 1508, 1522-23 (10th Cir. 1997); *Schmidt v. Hubert*, No. 05-2168, 2008 WL 4491467, at *14 (W.D. La. Oct. 6, 2008); *Stogner*, 2008 WL 269078, at *13.

[169] *Robinson v. Whitley*, 2 F.3d 562, 567 (5th Cir. 1993) (where there is no showing of error by a trial court, there can be fundamental unfairness); *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998).

[170] ECF No. 8-4 at 188, Trial Tr., 8/2/17.

[171] *Sanchez-Rodriguez*, 360 So. 3d at 476; ECF No. 8-9 at 2, La. S. Ct. Order, 23-KH-0191, 5/16/23.

[172] *Robinson*, 2 F.3d at 567; *Neal*, 141 F.3d at 214.

Furthermore, Troy was vigorously cross-examined by the defense at trial.[173]  To the extent that Sanchez-Rodriguez claims that the testimony should not have been believed, his argument fails on habeas review.  Once the testimony of an expert is properly admitted, it is for the jury to resolve the credibility and the reliability of the expert's testimony.  As previously addressed, it is not the role of a federal habeas court to assess the credibility of witness testimony.[174]

The denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court law.  Sanchez-Rodriguez is not entitled to relief on this claim.

### 3.  Ineffective Assistance of Counsel (Claim 3)

Sanchez-Rodriguez argues that his trial counsel was ineffective in failing to: (1) investigate the case; (2) object to Troy's testimony and challenge her credibility; (3) obtain an expert witness to rebut Troy's testimony; (4) "have the two DNA matches confirmed of their exact identity;" (5) move for a mistrial; (6) move for dismissal based on no conclusive evidence; and (7) present a defense.[175]

The State responds that Sanchez-Rodriguez fails to show deficient performance by his counsel.

### a.  **State Court Rulings**

In his application for post-conviction relief, Sanchez-Rodriguez argued that his counsel was ineffective.[176]  The trial court denied the claim, finding that Sanchez-Rodriguez failed to show prejudice.[177]  The Louisiana Fourth Circuit Court of Appeals denied relief without reasons.[178]  The

---

[173] ECF No. 8-4 at 210-11, 221-29, Trial Tr., 8/2/17.
[174] *Schlup*, 513 U.S. at 330; *Ramirez*, 398 F.3d at 695; *McCowin*, No. 93-5340, 1994 WL 242581, at *2; *Phillips*, No. 11-2725, 2012 WL 2564926, at *14; *Picou*, No. 06-6258, 2007 WL 1521021, at *5.
[175] ECF No. 1 at 6; ECF No. 1-1 at 15-17.
[176] ECF No. 8-1 at 141, First Uniform Application for Postconviction Relief,6/23/22.
[177] *Id.* at 127, Ruling Denying Post-Conviction Relief, 10/18/22.
[178] ECF No. 8-8 at 1, La. App. 4th Cir. Order, 2022-K-0773, 12/19/22.

Louisiana Supreme Court denied Sanchez-Rodriguez's related writ application, finding that he failed to show that he received ineffective assistance of counsel under *Strickland*.[179]

### b.  **AEDPA Standards and *Strickland***

The issue of ineffective assistance of counsel is a mixed question of law and fact.[180]  Thus, under the AEDPA, this court must determine whether the state courts' denial of relief was contrary to or an unreasonable application of Supreme Court precedent.

The United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice.[181]  The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."[182]  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[183]

In deciding ineffective assistance of counsel claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.[184]  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under *Strickland*, 'that the errors had some conceivable effect on the outcome of the proceeding.'"[185]

---

[179] *Sanchez-Rodriguez*, 360 So. 3d at 476; ECF No. 8-9 at 2, La. Sup. Ct. Order, 23-KH-0191, 5/16/23.

[180] *Strickland v. Washington*, 466 U.S. 688, 698 (1984); *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010).

[181] *Strickland*, 466 U.S. at 697.

[182] *Id.* at 687-88.

[183] *Id.* at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

[184] *Kimler*, 167 F.3d at 893.

[185] *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (citation omitted) (quoting *Strickland*, 466 U.S. at 693); *Harrington*, 562 U.S. at 112 (*Strickland* requires a "substantial" likelihood of a different result, not just "conceivable" one).

On habeas review, the United States Supreme Court has clarified that, under *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."[186] "Even under de novo review, the standard for judging counsel's representation is a most deferential one."[187] The courts must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance."[188]

Federal habeas courts presume that litigation strategy is objectively reasonable unless clearly proven otherwise by the petitioner.[189] "It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence."[190] In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial.[191] Tactical decisions, when supported by the circumstances, are objectively reasonable and do not amount to unconstitutionally deficient performance.[192]

**c.  Investigate the Case**

Sanchez-Rodriguez claims that his counsel failed to adequately investigate the case. Under *Strickland*, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."[193] However, the defense of a criminal case does

---

[186] *Harrington*, 562 U.S. at 105.

[187] *Id.*

[188] *Strickland*, 466 U.S. at 690.

[189] *Id.* at 689; *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008); *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999).

[190] *Harrington*, 562 U.S. at 105, 131 S. Ct. 770.

[191] *Strickland*, 466 U.S. at 689, 104 S. Ct. 2052; *Neal*, 286 F.3d at 236-37; *Clark v. Johnson*, 227 F.3d 273, 282-83 (5th Cir. 2000), *cert. denied*, 531 U.S. 1167, 121 S. Ct. 1129, 148 L.Ed.2d 995 (2001).

[192] *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) (citing *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997); *Mann v. Scott*, 41 F.3d 968, 983-84 (5th Cir. 1994)).

[193] *Strickland*, 466 U.S. at 691; *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986).

not "contemplate the employment of wholly unlimited time and resources."[194]  When a petitioner alleges failure of his counsel to investigate, he "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."[195]  A petitioner cannot show prejudice with respect to a claim that counsel failed to investigate without adducing what the investigation would have shown.[196]  Instead, to prevail on such a claim, the petitioner must provide factual support, not mere speculation, as to what exculpatory evidence further investigation would have revealed.[197]  Even if the attorney failed to conduct a reasonable investigation, the petitioner is still required to show prejudice resulting from that failure.[198]

Sanchez-Rodriguez presents no objective evidence at all to establish that his counsel failed to conduct a proper investigation.  Here, the record shows that counsel actively engaged in discovery and that discovery was provided to the defense.[199]  Counsel's questioning of the witnesses at trial shows that he was prepared and informed.

Sanchez-Rodriguez faults his counsel for failing to "have the two DNA matches confirmed of their exact identity."[200]  However, as the State points out, there was not enough DNA for the Louisiana State Police Crime Lab to obtain a single profile.[201]  For example, with regard to the dry secretion gauze, Naylor, the State's DNA expert, testified that "[t]he minor contributor was present

---

[194] *Smith v. Collins*, 977 F.2d 951, 960 (5th Cir. 1992).

[195] *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998) (citation omitted).

[196] *See Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir. 2007) (citing *Strickland*, 466 U.S. at 696) (some evidence is required to show that "the decision reached would reasonably likely have been different")).

[197] *Moawad*, 143 F.3d at 948; *accord Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005); *Davis v. Cain*, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008).

[198] *Lockhart*, 782 F.2d at 1282.

[199] ECF No. 8-3 at 198, Motion to Compel Disclosure and to Set for Contradictory Hearing, 10/7/14; *id.* at 202, Motion to Produce Video/Audio Interview of Victim, 2/25/14; *id.* at 219, Motion to Produce an Unredacted Police Report, 2/25/14 (noting discovery had been provided); *id.* at 227, Discovery Turned Over to Defense, 2/6/14; *id.* at 228-35, Omnibus Motions and Order for Pre-Trial Motions, 1/9/14.

[200] ECF No. 1-1 at 16.

[201] ECF No. 7 at 12.

at such a low concentration that a valid DNA profile could not be obtained."[202]  She explained that "[t]here is not enough for me to look at a reference samples and say, oh, this would be this person."[203]  With testing of the vaginal and oral swabs, there was an insufficient amount of male DNA to generate a Y-STR profile.[204]  The genital swabbing gauze was consistent with a mixture of DNA from at least two male individuals, but, because it was a limited profile, Naylor could not include or exclude Sanchez-Rodriguez or any male individuals in his biological paternal lineage.[205]  Naylor reiterated that there was not enough DNA present to obtain a full profile.[206]

Sanchez-Rodriguez presents no evidence that, had the defense conducted its own DNA testing of the samples, the test results would, in fact, have been beneficial information to the defense.  Rather, Sanchez-Rodriguez's claim that the proposed test results would have shown that the male DNA belonged to someone other than him is entirely speculative.  Such bare speculation does not suffice to meet his burden of proof.[207]

Sanchez-Rodriguez has failed to show that his trial counsel was ineffective in failing to investigate the case or any resulting prejudice.  The state courts' denial of relief was not contrary to or an unreasonable application of *Strickland*.  Sanchez-Rodriguez is not entitled to relief as to this claim.

---

[202] ECF No. 8-4 at 171, Trial Tr., 8/2/17.

[203] *Id*.

[204] *Id.* at 174.

[205] *Id.* at 174-76, 182.

[206] *Id.* at 179.

[207] *See Thomas v. Cain*, No. 09-4425, 2009 WL 4799203, at *9 (E.D. La. Dec. 9, 2009).

### d.  <u>Object to Troy's Testimony & Challenge Her Credibility</u>

Sanchez-Rodriguez claims that his counsel was ineffective in failing to object to Nurse Troy's testimony.  He further claims that his counsel was ineffective in failing to challenge her credibility.

At trial, defense counsel stipulated to Nurse Troy's credentials and that she was an expert in child sexual abuse and sexual assault.[208]  Presumably defense counsel made a strategic choice to enter into the stipulation.  Where a stipulation is a concession of facts that the State could have easily established at trial and no advantage would have inured to a petitioner had counsel refused to enter the stipulation, counsel is not ineffective when he enters into such a stipulation.[209]

Here, the prosecution could have easily established that Nurse Troy was an expert in the field of child sexual abuse and sexual assault.  Troy testified as an expert on numerous occasions both before and after Sanchez-Rodriguez's trial.[210]  Sanchez-Rodriguez fails to show that defense counsel could have successfully challenged Nurse Troy's qualifications such that the trial court would have denied Troy expert status.  Counsel is not ineffective for electing not to pursue a futile *Daubert* motion.[211]

---

[208] ECF No. 8-4 at 171, Trial Tr., 8/2/17, at 179.

[209] *See Berry v. King*, 765 F.2d 451, 454-55 (5th Cir. 1985); *McGee v. Cain*, No. 06-11360, 2007 WL 4591227, at *12 (E.D. La. Dec. 26, 2007) (citation omitted); *Parker v. 24th Jud. Dist. Ct.*, No. 06-10551, 2007 WL 2893852, at *6 (E.D. La. Sept. 27, 2007) (same).

[210] ECF No. 8-4 at 188, Trial Tr., 8/2/17 (Troy testified she had been tendered as an expert in the field of child sexual assault or sexual abuse close to 90 times); *State v. Primeaux*, 305 So. 3d 1014, 1023 (La. App. 3rd Cir. 10/21/20); *State v. Galan*, 277 So. 3d 365, 369 (La. App. 1st Cir. 5/14/19); *State v. Aguilar-Benitez*, 260 So. 3d 1247, 1253 (La. App. 5th Cir. 12/10/18); *State v. Freeman*, No. 2017-KA-0417, at *1 (La. App. 4th Cir, Dec. 29, 2017); *State v. Rodgers*, 202 So. 3d 1189, 1193 (La. App. 5th Cir. 10/26/16); *State v. Cotton*, No. 2016 KA 0081, 2016 WL 50188530, at *2-3 (La. App. 1st Cir. Sept. 16, 2016); *State v. Merwin*, 186 So. 3d 759, 763 (La. App. 4th Cir. 1/27/16); *State v. Eaglin*, No. 201 KA 1729, 2015 WL 1893276, at *6 (La. App. 1st Cir. April 24, 2015).

[211] *See Shields v. Dretke*, 122 F. App'x 133, 153 (5th Cir. 2005); *see also Flick v. Warren*, 465 F. App'x 461, 465 (6th Cir. 2012).

Sanchez-Rodriguez also faults his trial counsel for failing to question whether the victim's statements were the result of leading questions by Troy and to otherwise challenge Troy's credibility.

The method and scope of cross examination is a type of trial strategy for which counsel is granted reasonable latitude.[212]  The federal courts have made clear that "[t]he decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment."[213]  The United States Supreme Court has cautioned courts not to second guess counsel's decisions on such matters through the distorting lens of hindsight; rather, courts must employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy.[214]  It is irrelevant that another attorney might have made other choices or handled such issues differently.  As the Supreme Court noted: "There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way."[215]

Any second-guessing is inappropriate here.  The record reflects that defense counsel cross-examined Troy in an attempt to undermine her credibility.  As the State points out, defense counsel in fact questioned Troy about the leading nature of her questions.[216]  Defense counsel further questioned Troy about her ability to understand the victim.[217]

---

[212] *See United States v. Octave*, No. 12-205, 2015 WL 6620117, at *6 (E.D. La. Oct. 30, 2015) (citing *Pape v. Thaler*, 645 F.3d 281, 291) (5th Cir. 2011).

[213] *Ford v. Cockrell*, 315 F. Supp. 2d 831, 859 (W.D. Tex. 2004), *aff'd*, 135 F. App'x 769 (5th Cir. 2005); *accord Lewis v. Cain*, No. 09-2848, 2009 WL 3367055, at *8 (E.D. La. Oct. 16, 2009), *aff'd*, 444 F. App'x 835 (5th Cir. 2011); *Williams v. Cain*, Nos. 06-02224, 06-0344, 2009 WL 1269282, at *11 (E.D. La. May 7, 2009), *aff'd*, 359 F. App'x 462 (5th Cir. 2009); *Parker v. Cain*, 445 F. Supp. 2d 685, 710 (E.D. La. 2006).

[214] *Strickland*, 466 U.S. at 689.

[215] *Id.*

[216] ECF No. 8-4 at 226-28, Trial Tr., 8/2/17.

[217] *Id.* at 210-11, 222-26.

It is clear from the record that defense counsel attempted to discredit the State's case through cross-examination of Troy in an effort to raise doubt about the reliability of her testimony and in support of Sanchez-Rodriguez's claim of actual innocence. The testimony was presented to the jury, which, as the trier of fact, weighed and considered the testimony. The fact that the jury did not believe the defense does not render counsel's performance constitutionally deficient.[218]

The denial of relief on this issue was not contrary to or an unreasonable application of *Strickland*. Sanchez-Rodriguez is not entitled to relief as to this claim.

### e. <u>Obtain an Expert</u>

Sanchez-Rodriguez next claims that his counsel was ineffective in failing to secure an expert to rebut the testimony of Nurse Troy.

"'Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'"[219] To prevail on such a claim, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.[220] This requirement applies to both lay and expert witnesses.[221] The Fifth Circuit has "clarified that the seemingly technical requirements of affirmatively showing availability and willingness to testify '[are] not a matter of formalism.'"[222]

---

[218] *See Martinez v. Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004) ("[A]n unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").

[219] *Graves v. Cockrell*, 351 F.3d 143, 156 (5th Cir. 2003) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)); *Bray v. Quarterman*, 265 F. App'x 296, 298 (5th Cir. 2008).

[220] *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (citing *Bray*, 265 F. App'x at 298).

[221] *Woodfox*, 609 F.2d at 808 (citing *Day*, F.2d 566 at 538).

[222] *Hooks v. Thaler*, 394 F. App'x 79, 83 (5th Cir. 2010) (quoting *Woodfox*, 609 F.3d at 808).

Sanchez-Rodriguez has presented no evidence demonstrating that an expert was available and would have testified in a manner beneficial to the defense.[223] Indeed, he has not even identified an expert witness who was available and willing to testify. Nor has he set forth the content or substance of the unidentified expert witness' proposed testimony. As a result, this court cannot find counsel ineffective for failing to present the testimony of a purely theoretical expert.[224]

Sanchez-Rodriguez's arguments on this point are wholly speculative. Indeed, he has identified no actual evidence to contradict the trial evidence or the testimony of the State's expert, Nurse Troy. While defense counsel did not present testimony of a defense expert, defense counsel attempted to raise doubt as to the veracity of Troy's testimony. Initially, he objected to the introduction of the audio of the interview of the victim and questioned Troy about the proficiency of the translator.[225] On cross-examination, defense counsel pointed out that Troy did not include in the victim's incident history anything about an allegation that something was put in L.A.'s mouth.[226] He questioned Troy about her understanding of the victim's use of the word "negra."[227] He attempted to cast doubt on Nurse Troy's understanding of the victim's verbalization of what had occurred.[228] Defense counsel also questioned Troy as to the reason she formulated some of her questions to the victim in a manner to suggest an answer.[229] "[A] decision to attack the state's expert witnesses on cross-examination rather than calling additional experts can be a part of a reasonable trial strategy."[230]

---

[223] *See Scott v. Louisiana*, 934 F.2d 631, 633 (5th Cir. 1991).

[224] *Anthony v. Cain*, No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue.").

[225] ECF No. 8-4 at 208-12, Trial Tr., 8/2/17.

[226] *Id.* at 221-23.

[227] *Id.* at 223-24.

[228] *Id.* at 225-26.

[229] *Id.* at 226-28.

[230] *Bower v. Quarterman*, 497 F.3d 459, 467 (5th Cir. 2007) (citing *Strickland*, 466 U.S. at 491).

Sanchez-Rodriguez has presented no proof beyond his own speculation that an expert witness was needed or could have offered any specific support to his defense. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."[231]

The state courts reasonably concluded that Sanchez-Rodriguez is not entitled to relief under *Strickland*. He is likewise not entitled to habeas relief as to this claim.

### f. **Move for a Mistrial**

Sanchez-Rodriguez next claims that his counsel was ineffective in failing to move for a mistrial on the basis of Troy's incompetent testimony.

Counsel is not required by the Sixth Amendment to file meritless motions,[232] and the failure to file a meritless motion "cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."[233] In this case, Louisiana law did not require or provide any support for his counsel to move for a mistrial where no basis for such a motion existed. Counsel did not act deficiently or prejudicially in failing to present a meritless motion for a mistrial.[234]

The state courts' denial of relief was not contrary to or an unreasonable application of *Strickland*. Sanchez-Rodriguez is not entitled to relief on this issue.

---

[231] *Bower*, 497 F.3d at 467.

[232] *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995).

[233] *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

[234] *McKee v. Cain*, No. 10-344, 2010 WL 4366041, at *9 (E.D. La. Sept. 30, 2010), *R.&R. adopted*, 2010 WL 4362769 (E.D. La. Oct. 25, 2010); *Fields v. Cain*, No. 05-0074, 2007 WL 458208, at *4 and 17 (E.D. La. Feb. 8, 2007).

### g.  **Move to Dismiss**

Sanchez-Rodriguez further claims that his counsel was ineffective in failing to move to dismiss the case on the basis that there was no conclusive evidence to tie him to the crime charged. He points to the lack of conclusive DNA evidence.

Whether to file a motion is generally considered to be a matter of litigation strategy, and counsel's actions may not be considered deficient if, under the circumstances, the challenged action might be considered sound trial strategy.[235]

Here, Sanchez-Rodriguez fails to show that his counsel was ineffective in failing to move to dismiss or any resulting prejudice.  As previously discussed, regardless of the lack of conclusive DNA evidence, legally sufficient evidence supports Sanchez-Rodriguez's conviction.  Because there were no valid grounds to support a motion to dismiss the case, counsel was not deficient for failing to lodge such a motion.  Failure to file a frivolous motion or lodge a futile objection does not cause counsel's performance to fall below an objective level of reasonableness.[236]

Thus, the denial of relief on this issue was not contrary to or an unreasonable application of *Strickland*.  Sanchez-Rodriguez is not entitled to relief on this claim.

### h.  **Formulate a Defense**

Finally, Sanchez-Rodriguez claims that his attorney failed to present a defense.

An attorney is not necessarily ineffective for failing to investigate every conceivable, potentially nonfrivolous matter or defense.[237]  To prevail on a claim that counsel was ineffective

---

[235] *Jackson v. Thaler*, 358 F. App'x 585, 586 (5th Cir. 2009)(citing *Strickland*, 466 U.S. at 689).

[236] *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (counsel is not required to make futile motions or frivolous objections); *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) ("'[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite.'") (quoting *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994)).

[237] *Smith v. Collins*, 977 F.2d 951, 960 (5th Cir. 1992).

for failing to pursue a certain defense, a petitioner must show that the defense in question was in fact a viable one.[238]

In this case, counsel actually presented the defense that Sanchez-Rodriguez urges; i.e., that he was innocent.  The factual determination of Sanchez-Rodriguez's guilt or innocence turned on the credibility of the witnesses.  In Sanchez-Rodriguez's defense, counsel both attacked the credibility of the State's witnesses and presented Sanchez-Rodriguez's own testimony as well as that of his wife and attempted to present the testimony of his daughter.  Counsel cannot be deemed ineffective for relying on the State's inability to support its case, effective defense cross-examination of the State's witnesses and the presentation of Sanchez-Rodriguez's own testimony and that of his wife.  This strategy was successful, to a certain extent, in that the jury found Sanchez-Rodriguez's guilty of the lesser offense of sexual battery.  The fact that he was not acquitted does not mean that counsel's actions leading to the conviction were deficient.[239]

Sanchez-Rodriguez fails to demonstrate either prong of the *Strickland* test.  The state courts reasonably concluded that he is not entitled to relief under *Strickland*.  He is not entitled to relief as to this claim.

## IV.    RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Jorge Sanchez-Rodriguez's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days

---

[238] *See, e.g.*, *Otero v. Louisiana*, No. 12-1332, 2013 WL 6072716, at *14-15 (E.D. La. Nov. 18, 2013); *Higgins v. Cain*, No. 09-2632, 2010 WL 890998, at *9 n. 24 (E.D. La. Mar. 8, 2010), *aff'd*, 434 F. App'x 405 (5th Cir. 2011).
[239] *See Martinez*, 99 F. App'x at 543.

after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[240]

New Orleans, Louisiana, this _____12th_____ day of March, 2024.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[240] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*) (citing 28 U.S.C. § 636(b)(1)).  *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).